UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ACUTUS MEDICAL, INC. SECURITIES LITIGATION | Case No.: 22-cv-206-RSH-VET<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>[ECF No. 39] |

Pending before the Court is a motion to dismiss the Second Amended Consolidated Class Action Complaint ("SAC" or "Complaint") for failure to state a claim filed by Defendants Acutus Medical, Inc. ("Acutus"), Vince Burgess, and David H. Roman (collectively "Defendants"). ECF No. 39. As set forth below, the Court grants the motion.

**I.   BACKGROUND**

On February 15, 2022, plaintiff Jeffry Brown filed a putative class action complaint against Defendants. ECF No. 1. On July 19, 2022, the Court consolidated *Jeffry Brown v. Acutus Medical, Inc., et al.*, No. 22-cv-206, and *Clinton A. Ferguson v. Acutus Medical, Inc., et al.*, No. 22-cv-388. ECF No. 21. The Court also appointed Paul D. Weinberg to serve as lead plaintiff. *Id.*

On September 16, 2022, Weinberg filed an Amended Consolidated Class Action Complaint ("CAC"). ECF No. 27. On September 27, 2023, the Court issued an order dismissing Plaintiff's CAC with leave to amend (the "Order"). ECF No. 35.

On October 27, 2023, Plaintiff filed the operative SAC. ECF No. 38. Just like the CAC, the SAC alleges fraud in connection with a series of statements made by Defendants in 2021: (1) a press release on May 12, 2021 announcing Acutus's results for Q1 (the "Q1 2021 Press Release"); (2) a public conference call held that same day (the "Q1 2021 Call"); (3) a call held the following day at a global healthcare conference (the "May 13, 2021 Call"); (4) secondary public offering materials filed with the Securities and Exchange Commission ("SEC") in July 2021 (the "SPO Materials"); (5) a press release on August 12, 2021 regarding Q2 2021 (the "Q2 2021 Press Release"); and (6) a public conference call held that same day (the "Q2 2021 Call"). Also like the CAC, the SAC includes two claims: (1) for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against all Defendants; and (2) for violation of Section 20(a) of the Exchange Act against Defendants Burgess and Roman ("Individual Defendants").

On December 1, 2023, Defendants filed a motion to dismiss the SAC for failure to state a claim. ECF No. 39. The motion has been fully briefed. ECF Nos. 41-42.

The Court's Order of September 27, 2023 set forth at length the factual background and relevant chronology of events, ECF No. 35 at 2-11, which are also applicable to the SAC. The Order reviewed the allegations of the CAC and determined that it failed to adequately allege misrepresentations or omissions, *id.* at 13-26, to adequately plead scienter, *id.* at 26-33, or to adequately plead loss causation, *id.* at 33-35. For these three independent reasons, the Court granted Defendants' motion to dismiss the CAC; but the Court also granted Plaintiff leave to amend to correct these deficiencies in a new pleading.

In filing the SAC, Plaintiff failed to also submit a version of the pleading that identified changes relative to the CAC, as required by the local rules of this Court and the undersigned's chambers rules. CivLR 15.1(c), Chambers Civ. Proc. III(I). Plaintiff's brief

does not undertake to explain how, if at all, the 75-page SAC differs from the 106-page CAC. Plaintiff's brief does not undertake to explain how, if at all, the SAC addresses the deficiencies identified by the Court's Order of September 27, 2023. Indeed, Plaintiff's brief does not discuss or mention that Order. As Plaintiff is aware, many of the allegations in the SAC are identical to those that the Court previously found inadequate.

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "disregard[s] '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "After eliminating such unsupported legal conclusions, we identify 'well-pleaded factual allegations,' which we assume to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.*

For securities fraud claims, a plaintiff "must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007)). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Pursuant to Rule 9(b), "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). The PSLRA requires that "the complaint shall, with respect to each act or omission … state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).

## III. DISCUSSION

### A. Section 10(b) of the Exchange Act

Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange … any manipulative or deceptive device or contrivance …." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (citing 15 U.S.C. § 78j(b)). Rule 10b-5 was promulgated and provides that it is unlawful for any person "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Id*. (citing 17 C.F.R. § 240.10b-5). To plead a claim under Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiff must allege the following elements:

> [1] a material misrepresentation or omission;
>
> [2] scienter, *i.e.,* a wrongful state of mind;
>
> [3] a connection with the purchase or sale of a security;
>
> [4] reliance;
>
> [5] economic loss; and
>
> [6] loss causation, *i.e.,* a causal connection between the material misrepresentation and the loss[.]

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (numbering and formatting added for reference). "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Apollo Group*, 774 F.3d at 605. In moving to dismiss the SAC, Defendants again challenge whether Plaintiff has sufficiently pleaded a material misrepresentation or omission (first element), scienter (second element), and loss causation (sixth element). As such, the Court addresses each disputed element in turn.

### B. The Former Employee

From the Court's review of the SAC relative to the CAC, it appears that the SAC relies more heavily to support its theories of misrepresentations and omissions on

information provided by an unnamed former employee (the "Former Employee"), to the effect that Acutus entered into undisclosed "research agreements" with physicians. As explained at the outset of Plaintiff's brief:

> Unbeknownst to investors, Acutus installed the majority of its AcQMaps with new customers pursuant to paid "research agreements," under which Acutus paid physicians $2000-$3000 for each use of the AcQMap. A "use" sufficient to collect the fee consisted of opening one of Acutus's mapping-based catheters. In other words, a customer would be able to collect the fee even if they used a standard of care competitor system for the procedure, so long as they at least opened one of Acutus's mapping-based catheters, which still generated some revenue for Acutus.

ECF No. 41 at 1. The prior Order addressed whether the allegations about the Former Employee in the CAC were sufficient to allege evidence of scienter, and concluded that they were insufficient. ECF No. 35 at 32-33. The Court explained:

> To rely on a confidential witness's statements to establish scienter, "(1) the confidential witnesses … must be described with sufficient particularity to establish their reliability and personal knowledge; and (2) those statements which are reported … must themselves be indicative of scienter." *Ferreira v. Funko Inc.*, No. LACV 20-02319-VAP (PJWx), 2021 WL 880400, at *26 (C.D. Cal. Feb. 25, 2021) (citations and quotations omitted). In order for witness declarations to support an inference of scienter, "they must provide specific facts showing a connection between the false statement and the mindset of the person who made it." *Prodanova*, 993 F.3d at 1110 (citing *Zucco Partners, LLC*, 552 F.3d at 996).
>
> Here, Plaintiff fails to make this connection. The Complaint does not allege that the Former Employee directly worked with, spoke to, or otherwise interacted with Defendants. *See Police Ret. Sys. of St. Louis*, 759 F.3d at 1062-63 (finding that the complaint did not support a strong inference of scienter when it pointed to witnesses who "lacked direct access to the executives" and omitted the "link between the witnesses and the executives"); *Jun Shi v. Ampio Pharms., Inc.*, No. 2:18-cv-07476-RGK-RAO, 2020 WL 5092910, at *6 (C.D. Cal. June 19, 2020) (declining to find a strong inference of scienter in part because "[t]here are no particularized allegations that any of these confidential witnesses

> communicated concerns … to Defendants"); *cf. In re Fibrogen, Inc.*, No. 21-CV-02623-EMC, 2022 WL 2793032, at *22 (N.D. Cal. July 15, 2022) (finding that witness had personal knowledge from direct interaction with senior officer by attending boardroom meetings in which senior officer presented data). Plaintiff's allegations about the Former Employee do not establish a strong inference of scienter.

*Id.*

The SAC alleges as follows regarding the Former Employee. The Former Employee was employed by Acutus as a Senior Therapy Manager from 2019-22. ECF No. 38 ¶ 46. Therapy managers, also known as therapy mappers, are responsible for training medical providers on how to use the AcQMap System, and for assisting sales representatives. *Id.* ¶ 47. The Former Employee is a trained nurse with 15 years of experience. *Id.* ¶ 48. He or she was responsible for sales and training, and would operate the AcQMap System during procedures conducted by physicians. *Id.* The Former Employee was hired to work in the Northeastern U.S., but traveled all over the country to attend procedures, and went to Europe once for a two-week period to do the same. *Id.* He or she reported to three individuals at Acutus, one of whom – East Coast Regional Director Brandon Allen – was a direct report of defendant Burgess. *Id.* ¶ 49. "In the Former Employee's experience, the majority of physicians using the AcQMap System were … using [it] pursuant to Research Agreements." *Id.* ¶ 50. In most of the procedures he or she attended, there were two systems in the room – the AcQMap system, and a competitor system. *Id.* ¶ 51. "The physician would typically use a competitor system to conduct the actual procedure, but would open the Acutus AcQMap catheter, which was sufficient for the physician to be able to represent to Acutus that the AcQMap System had been used such to collect the $2000-$3000 fee from Acutus." *Id.*

To comply with the PSLRA, plaintiffs must "reveal with particularity the sources of their information." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005)). "[I]f the complaint relies on a confidential witness and no other information" to support an

allegation, "the complaint must describe the confidential witness with 'sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Id*. at 767 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)). The Court considers "the level of detail provided by the confidential witnesses, the plausibility of the allegations, the number of sources, the reliability of the sources, corroborating facts, and similar indicia of reliability." *Id.* (citing *Zucco*, 552 F.3d at 995).

Central to the SAC is the allegation that Acutus failed to disclose that "its business was predominantly derived from paid research agreements which did not encourage physicians to meaningfully utilize or adopt the AcQMap System and its related accessories." ECF No. 38 ¶ 52; *see also id*. ¶¶ 17, 46, 68, 75. Plaintiff's only source for the existence of the research agreements is the Former Employee. But the allegations relating to the Former Employee suffer from two flaws.

First, the SAC still fails to allege how the Former Employee knew about the existence of such agreements. Were the agreements written or oral? If written, did the Former Employee see copies of the agreements being presented or explained to physicians, or signed by physicians? Did the Former Employee (for example) see signed copies of the agreements on a network drive, or find an unsigned copy on a company printer? If the agreements were oral, did the Former Employee overhear such agreements being entered into between Acutus personnel and physicians? Was the Former Employee himself or herself responsible for explaining, providing, or obtaining assent to the agreements? If not, who at Acutus was responsible, and how does the Former Employee know that such personnel were responsible? What did the Former Employee see, hear, or do that leads him or her to conclude that such agreements exist? When and where did such episodes occur? The SAC alleges that the Former Employee observed physicians open an Acutus catheter but then use a competitor system to conduct the actual procedure – but how does the Former Employee know that this was pursuant to a research agreement?

Second, the SAC still fails to connect the Former Employee's knowledge to executives at Acutus. Plaintiff alleges that one of the individuals to whom the Former Employee reported – in the sense of reporting to a supervisor, rather than in the sense of imparting specific information – in turn reported to defendant Burgess. But the SAC fails to allege that the Former Employee told his or her boss, Brandon Allen, about the research agreements, much less that Allen conveyed that information to defendant Burgess. Nor does the SAC plead other facts with sufficient particularity to allow the Court to conclude that Allen, Burgess, or some other executive was aware of the research agreements such that Acutus's failure to disclose those agreements is actionable.

Without greater particularity, the Court is unable to assess other indicia of reliability or plausibility as to the Former Employee's allegations. Accordingly, for purposes of Defendants' motion to dismiss for failure to state a claim, the Court disregards the allegations relating to the Former Employee's information, and therefore disregards any allegations regarding the existence of the research agreements.

### C. Alleged Misrepresentations

In moving to dismiss, Defendants argue, as they did in their earlier successful motion, that Plaintiff fails to adequately plead material misrepresentations or omissions. ECF No. 39-1 at 1, 11-12, 19-25. The Court's Order reviewed the material misrepresentations and omissions alleged in the CAC, and concluded that they were non-actionable, either because the statements were vague, or based the safe harbor for forward-looking statements, or as a result of Defendants' affirmative disclosures. ECF No. 35 at 13-26.

Plaintiff responds that the SAC adequately pleads material misrepresentations, grouping the alleged misrepresentations into three categories. ECF No. 41 at 12-17.

First are "statements about the installed base," of which the only statement that Plaintiff appears to identify as materially misleading is the statement that Defendants expected to increase the pace of installations by at least 12 units per quarter. *Id*. at 13 (citing ECF No. 38 ¶¶ 109-10). Plaintiff does not claim that this statement was false, but rather

that it "created an impression that Acutus was achieving growth," an impression that "differed in a material way from the one that actually existed: the majority of AcQMaps under evaluation agreements were installed pursuant to undisclosed 'research agreements' under which Defendants paid personnel responsible for conducting electrophysiology procedures per 'use' of the AcQMap." *Id*. This theory therefore rests on the existence of the research agreements, which as discussed above, the Court is disregarding as inadequately pleaded.

Second are "statements about the pace of installations and projected revenue," of which Plaintiff identifies two statements: (1) that Acutus's revenue projections were based on a "modest" assumption that "types of improvements [we] were seeing throughout the first quarter … [W]e did see a 50% increase in the utilization rate in the U.S."; and (2) "we have a number of systems coming up for evaluation … where we expect to convert those to capital …. [W]e have already seen conversions here in the third quarter." *Id*. at 15 (citing ECF No. 38 ¶¶ 122, 144). Here, too, Plaintiff's theory of misrepresentation appears to be that these statements were misleading because they were premised on the volume of system placements, but Defendants failed to disclose that most systems had been placed pursuant to purported research agreements. ECF No. 41 at 16-17.

Third are "statements regarding utilization rates," which Plaintiff fails to further specify. *Id*. at 17. Here as well, Plaintiff's theory of misrepresentation is based on the failure to disclose research agreements. *Id*. ("[t]he undisclosed 'research agreements' … artificially increased utilization rates").

The Court concludes the SAC, like its predecessor, fails to adequately allege a misrepresentation or omission, and that Plaintiff thereby fails to state a claim under Section 10(b) of the Exchange Act or Rule 10b-5.

### D. Scienter

Defendants also argue that the SAC fails to adequately plead strong evidence of scienter, as the Court previously determined that the CAC had failed to do. ECF No. 35 at 26-33. In response, Plaintiff raises the same three theories of scienter that the Court rejected

in connection with the CAC: (1) Defendants' motivation, (2) Defendants' access to information, and (3) the Former Employee's allegations. ECF No. 41 at 18-22.

The PSLRA "requires that the complaint 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003) (citing 15 U.S.C. § 78u–4(b)(2)). "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness.'" *Zucco*, 552 F.3d at 991 (citation omitted).

### 1. *Defendants' Motivation*

The SAC alleges that "[d]efendants were motivated to engage in their fraudulent scheme during the Class Period to enable Acutus to raise cash at inflated levels not merely to obtain good financing and expand business, but rather, to enable Acutus to continue its operations." ECF No. 38 ¶ 172. The Court previously concluded that similar allegations in the CAC were insufficient. *See* ECF No. 35 at 28-29; *see In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002)) ("[A]llegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects."); *see also Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (dismissing as not "specific" or "particularized" the plaintiffs' allegation of the defendants' "motive to boost the company's profitability and stock prices in the months surrounding the company's IPO"; "[s]urely every company that goes public wants to maintain its apparent profitability prior to its IPO and to maintain a high share price afterward in order to finance acquisitions and expand").

The SAC adds allegations about the executive compensation package of defendants Burgess and Roman, to support the contention that they were motivated by personal financial gain to artificially inflate Acutus's stock price. The SAC alleges that Defendants'

annual bonus was determined, among other things, based on achieving the target objectives for the company. ECF No. 38 ¶¶ 181-82. The SAC also alleges that through the Equity Incentive Plan, Defendants could participate in stock and equity plans, the vesting of which depended on conditions such as an IPO or change of control. *Id.* ¶ 183. The SAC further alleges that the Employee Stock Plan allowed employees to purchase shares of Acutus's common stock, subject to the discretion of the Compensation Committee and Company's Board of Directors. *Id.* ¶ 184.

"A strong correlation between financial results and stock options or cash bonuses for individual defendants may occasionally be compelling enough to support an inference of scienter." *Zucco*, 552 F.3d at 1004. To demonstrate a strong correlation, the complaint should include comparisons to previous years' bonuses between the bonuses and the company's "bottom line." *In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZX), 2009 WL 2767670, at *13 (C.D. Cal. Aug. 21, 2009) (citing *id.* at 1005). In other words, there must be allegations "indicating how intimately the bonuses were tied to the company's financials." *Zucco*, 552 F.3d at 1004.

The SAC's allegations regarding the executive compensation plans are too generalized to raise a strong inference of scienter. As to Roman, the SAC alleges that the company granted restricted stock units valued at $500,000 and stock options valued at $700,000 to Roman on April 1, 2021. ECF No. 38 ¶ 182. Acutus conducted its SPO in July 2021. These allegations do not allow the Court to infer a connection between Defendant Roman's bonus and his alleged misrepresentations to artificially inflate the stock price for the SPO. *See In re XenoPort, Inc. Sec. Litig.*, No. C-10-03301 RMW, 2011 WL 6153134, at *5 (N.D. Cal. Dec. 12, 2011) (concluding that allegations did not support inference of scienter when they concerned defendants' 2008 bonus and SPO was announced in July 2009).

The allegations as to Burgess are even more generalized. The SAC alleges that Burgess's employment agreement states he would be granted 3,990,686 shares of Acutus common stock following an unspecified "effective date." ECF No. 38 ¶ 181. However, the

SAC does not include any allegations as to either defendant that allow the Court to draw a comparison between their compensation for the prior year and the year in which they allegedly inflated the stock price. *See Zucco*, 552 F.3d at 1004 (holding allegation that "executive-level bonuses were 'based in part' on [defendant's] financial performance" was inadequate to establish scienter when it failed to provide comparisons to prior years bonuses and the correlation between individual defendants' compensation and [company's] bottom line); *cf. America West*, 320 F.3d at 944 (concluding strong inference of scienter when complaint included detailed allegations comparing defendants' prior year's compensation with year at issue). Moreover, although not determinative, any inference of scienter is diminished by the SAC's failure to allege any suspicious or unusual stock sales or trading patterns by Defendants. *See America West*, 320 F.3d at 938 (citation and internal quotation marks omitted) ("[U]nusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter"); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017) (corporate officer's "massive and uncharacteristic sale" made shortly before stock steeply declined supported strong inference of scienter).

Finally, the allegations in the SAC discredit the notion that Defendants' bonuses were "intimately . . . tied to the company's financials." *Zucco*, 552 F.3d at 1004. The SAC alleges that Defendants' bonuses were based not only on achieving target objectives for the company, but also on their performance and "any other terms to be determined by the Board in its sole discretion." ECF No. 38 ¶¶ 181-82; *cf. America West*, 320 F.3d at 944 (concluding strong inference of scienter can be inferred when "executive bonuses were based principally on the company's financial performance").

The Court concludes that the SAC's allegations regarding Defendants' motives do not establish a strong inference of scienter.

### 2. Defendants' Access to Information

The SAC alleges that Defendants, "as high-ranking executives and officers of Acutus …. knew or should have known that Acutus was increasing its installed base

pursuant to paid research agreements." ECF No. 38 ¶ 156. The SAC likewise alleges that Defendants "knew or should have known that their public statements did not disclose the existence of the research agreements and that their public statements created a misleading impression of the Company's business, operations, installed base, and prospects." *Id.* As discussed above, the SAC's allegations relating to the existence of these research agreements, based solely on information provided by the unnamed Former Employee, are inadequate. Having failed to adequately plead the existence of such agreements, the SAC also fails to adequately plead scienter of Defendants based on their access to information relating to the purported agreements.

### 3. *Former Employee*

The SAC also contains allegations of scienter based on the account of the Former Employee. ECF No. 38 ¶¶ 163-67. As discussed above, the SAC's allegations relating to the Former Employee are insufficient.

### E. Loss Causation

As before, Defendants argue that Plaintiff fails to adequately plead loss causation. The SAC, like the CAC, alleges that "the concealed risks materialized" when Acutus made its disclosures on August 12, 2021 and November 11, 2021. ECF No. 27 ¶¶ 174-75; ECF No. 38 ¶ 190. The Court previously determined that these allegations failed to plead loss causation because they did not constitute corrective disclosures or otherwise reveal fraudulent practices. ECF No. 35 at 33-35.

Plaintiff's brief argues that Defendants' disclosures revealed new information about "the adverse effects of installing AcQMaps pursuant to undisclosed paid 'research agreements,' which partially corrected their prior misleading representations during the Class Period." ECF No. 41 at 25. However, the SAC does not in fact contain these allegations of loss causation, and in any case, the Court has determined that the existence of the purported research agreements has been inadequately pleaded.

//
//

F.    **Scheme Liability**

The SAC, in Claim One, asserts an alternative theory of "scheme liability" in violation of Rules 10b-5(a) and 10b-5(c) against all Defendants. ECF No. 38 at 51-53. Under a scheme liability theory, "a defendant who uses a 'device, scheme, or artifice to defraud,' or who engages in 'any act, practice, or course of business which operates or would operate as a fraud or deceit,' may be liable for securities fraud." *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011), *abrogated on other grounds by Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094 (2019). "A defendant may only be liable as part of a fraudulent scheme . . . when the scheme also encompasses conduct beyond those misrepresentations or omissions." *Id.* Thus, to assert a scheme liability claim "a plaintiff must allege the same elements as a Rule 10b-5(b) claim, except that a scheme liability claim cannot be based solely on false or misleading statements." *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-CV-07142-HSG, 2019 WL 3817849, at *8 (N.D. Cal. Aug. 14, 2019).

Plaintiff's scheme liability theory here is simply a recasting of his theories of material misrepresentations and omissions. ECF No. 38 ¶¶ 146-55. The SAC alleges, in describing the scheme, that "[t]hroughout the Class Period, Defendants represented that the Company increased its installed base primarily by placing AcQMap Systems under loan agreements," but that in fact, "according to the Acutus Former Employee, during the Former Employee's tenure at the Company from 2019-2022, Defendants placed the majority of AcQMap Systems with customers under research agreements …." *Id.* ¶¶ 151-52. The SAC further alleges that "Defendants never disclosed the existence of such agreements to investors." *Id.* ¶ 152. This is identical in substance to Plaintiff's allegations of misrepresentations and omissions.

In *WPP*, in dismissing the plaintiff's scheme liability claim, the Ninth Circuit determined that since the plaintiff did not allege any facts separate from its omission claims, its allegations concerning the defendant's failure to disclose a sale of securities was "fundamentally . . . an omission claim." *Id.* at 1058. Similarly here, the SAC's scheme

liability claim repeats the same allegations regarding the Former Employee's account of the research agreements and Defendants' alleged failure to disclose the existence of such agreements. ECF No. 38 ¶¶ 152-54; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1017 (9th Cir. 2018) (dismissing scheme liability claim when complaint did "not specify what steps, if any, [defendants] took in furtherance of the alleged scheme."). He has not alleged deceptive conduct beyond the misrepresentations and omissions already pleaded. ECF No. 41 at 11-12. *Cf. In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1193 (D. Or. 2015) (concluding that plaintiff alleged conduct beyond misrepresentations and omissions such as manipulating stock price, and hiring and paying investor relations firms above-market rates); *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 57 F. Supp. 3d 950, 981 (D. Minn. 2014) ("Defendants' *actions* in manipulating the studies (as opposed to their statements)—had the effect of artificially propping up [defendants'] stock prices on account of confidence in . . . sales."); *Aqua Metals*, 2019 WL 3817849, at *9 (finding "alleged misconduct is distinct from and goes beyond the making of the alleged misrepresentations" when complaint alleged, among others, that defendants orchestrated on-site visits and deliberately concealed problems relating to viability of their proprietary process).

Additionally, as discussed above, the SAC does not adequately plead a strong inference of scienter or loss causation. These, too, are elements of a scheme liability claim. *See Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-04353-BLF, 2023 WL 4412164, at *12 (N.D. Cal. July 7, 2023) (dismissing scheme liability claim because plaintiffs have not alleged scienter as to a scheme to defraud investors); *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (dismissing scheme liability claim because plaintiffs failed to allege false or misleading conduct and a strong inference of scienter). Accordingly, Plaintiff's scheme liability theory is also subject to dismissal.

### G. Section 20(a) of the Exchange Act

Because the Court concludes that Plaintiff fails to state a claim under Section 10(b), Plaintiff's Section 20(a) claim also fails. *See Zucco*, 552 F.3d at 990 ("Section 20(a) claims

may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b).").

## IV. LEAVE TO AMEND

Plaintiff's brief states that, in the event "the Court grants any portion of Defendants' Motion, Plaintiff respectfully requests leave to amend." ECF No. 41 at 25. Plaintiff cites the Ninth Circuit's decision in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). That decision quoted the Supreme Court in offering the following factors a district court should consider in deciding whether to grant leave to amend:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiff's brief does not address any of these factors.

Plaintiff's brief in opposing Defendants' previous motion to dismiss the CAC made the same request citing the same case. ECF No. 33 at 35. The Court readily granted leave to amend. However, the SAC did not cure the deficiencies in the CAC. Furthermore, Plaintiff's brief made no effort to identify how the SAC cured those deficiencies, or even to identify how the SAC was different from the CAC.

Within thirty (30) days of the date of this Order, Plaintiff may file a motion for leave to file a third amended pleading. The motion shall address and apply the legal standard applicable to a motion to amend. The motion must be accompanied by a proposed third amended complaint, as well as two redline versions showing changes relative to both the SAC and the CAC. The motion must also explain how the proposed amendments address the deficiencies identified in this Order and in the Court's prior Order of September 27, 2023. The motion must also identify with specificity every misrepresentation or misleading statement alleged in the third amended complaint, citing and quoting the relevant language

of the third amended complaint. If Plaintiff fails to timely file such a motion to amend, the action will be dismissed and the case closed.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.[1] Within thirty (30) days of this Order, Plaintiff may file a motion for leave to file a third amended complaint subject to the requirements identified in the preceding paragraph.

**IT IS SO ORDERED**.

Dated: March 26, 2024

_____
Hon. Robert S. Huie
United States District Judge

---

[1] Plaintiff requests judicial notice of Exhibit A. ECF No. 41-3. Further, Defendants request judicial notice of Exhibits 1-10. ECF No. 39-2. Plaintiff does not oppose Defendants' request "to the extent the Court takes notice of the fact that the documents exist and what they say." ECF No. 41 at 4 n.3. The Court grants Plaintiff and Defendants' requests and takes judicial notice of the existence and statements contained in the exhibits because they are incorporated by reference in the operative complaint.